IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 14-611 |
| | : | |
| | : | |
| JAVIER PEREZ | : | |

**MEMORANDUM**

On January 14, 2015, a jury convicted Javier Perez of one count of possessing child pornography. Currently before me is Perez's Amended Motion Under 28 U.S.C. § 2255 to Vacate Conviction. For the reasons set forth below, I will grant Perez's § 2255 motion and vacate his conviction.

I. BACKGROUND

a. Indictment and initial trial counsel

A federal grand jury charged Javier Perez with possession and distribution of child pornography on November 14, 2014. ECF No. 1. The charges were for ten files found by the FBI on Perez's computer: eight videos and two images. Trial Transcript 1/12/16, at pp. 86-91; ECF No. 113-1, at pp. 14-15. Perez was initially represented by Assistant Federal Defender James McHugh, and the case was assigned to the Honorable Jan E. DuBois. ECF No. 5; ECF No. 6. McHugh retained Tami Loehrs as a computer forensic expert to examine and testify about the contents of Perez's computer. ECF No. 35; ECF No. 165, at p. 31. McHugh told Judge DuBois that Loehrs would be a "critical witness for the defense." ECF No. 35. Loehrs traveled to Radnor, Pennsylvania to examine a mirror image of Perez's hard drive at the FBI's Regional Computer Forensic Laboratory ("RCFL"). ECF No. 165, at pp. 33-34. Based on this analysis,

1

Loehrs wrote a draft report that she sent to McHugh on June 19, 2015. ECF No. 139-2, at pp. 133-222; ECF No. 165, at pp. 37-38, 94.

In her initial analysis, Loehrs was unable to find forensic evidence of Perez ever viewing any child pornography images. ECF No. 139-2, at pp. 138-39. However, she encountered multiple technical obstacles at the RCFL and was not able to examine Perez's computer "with the necessary software, equipment, and resources required for a thorough in-depth forensics examination." *Id.* at p. 135. Loehrs wrote that "[b]ased on my preliminary examination, there may be evidence critical to the defense in this case that may require additional examination of the evidence in a more suitable environment including evidence of other users who had access to this computer . . . ." *Id.*

Loehrs also wrote in her draft report that two of the alleged child pornography images were located in the folder where images go when they are "cached," or downloaded without ever being seen or sought out. ECF No. 139-2, at pp. 48, 138. Loehrs was not able to locate the images themselves because she was not given their file name or URL. *Id*. Although the government provided these file names and original URLs to McHugh on June 2, 2015 and additional information about the files at issue on May 29, 2015 and July 28, 2015, none of this discovery was given to Loehrs.[1] *Id.* at pp. 43, 232-38; ECF No. 113-1, at p. 9; ECF No. 165, at p. 39; ECF No. 166, at pp. 16-17.

    b. New trial counsel and trial

On September 4, 2015, Maria Pedraza, an assistant federal defender in the same office as McHugh, took over Perez's case and filed an unopposed motion to continue trial. ECF Nos. 46-47. Judge DuBois held a hearing on the motion on October 7, 2015. ECF No. 52. Pedraza argued

---

[1] Loehrs was eventually provided this discovery when she was hired by habeas counsel in 2019, more than three years after Perez was convicted. *See infra* Section I(c), at pp. 4-5.

that she needed additional time to review the discovery and prepare for trial, but said she was not considering undertaking any further investigation because all investigation was completed by prior counsel. Continuance Hrg. Transcript 10/7/15, at pp. 3-4. Judge DuBois granted Pedraza's request and continued the trial for more than three months, until January 11, 2016. *Id.* at p. 5; ECF No. 53.

Pedraza never asked Loehrs to return to Radnor or to examine the computer evidence again. ECF No. 165, at pp. 39. Pedraza also failed to provide Loehrs with any of the discovery received from the government. ECF No. 139-2, at p. 43; ECF No. 165, at p. 39; ECF No. 166, at pp. 16-17. Pedraza waited months to contact Loehrs, who heard from no one at the federal defender's office for five or six months after writing her draft report. ECF No. 165, at p. 89. When Pedraza finally contacted Loehrs, she identified herself as Perez's new attorney and asked Loehrs to simply sign the draft report. *Id*. Loehrs sent the finalized report to Pedraza on January 6, 2016, a week before trial. ECF No. 139-2, at pp. 43-132.

Although Loehrs had not done any additional work or been provided with complete discovery, Pedraza flew Loehrs from Arizona to Philadelphia to testify and compensated Loehrs $4700 for attending trial. ECF No. 165, at pp. 95, 158. On the last day of trial, Pedraza told the judge she would not be calling an expert witness. Trial Transcript 1/13/16, at p. 2. The jury found Perez guilty of knowingly possessing child pornography and not guilty of knowingly distributing child pornography. ECF No. 78. Perez was sentenced to 48 months of incarceration and seven years of supervised release. ECF No. 93.

    c. <u>Habeas petition and evidentiary hearing</u>

Perez filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. ECF No. 110. He argued that Pedraza was ineffective in part because she declined to call Loehrs without

Perez's knowledge or consent. *Id.* at p. 22. On February 12, 2019, Judge DuBois appointed Susan Lin to represent Perez in his habeas motion. ECF No. 116. Lin contacted Loehrs in 2019 and provided her once again with the data from Perez's hard drive. ECF No. 165, at p. 40. This time, Loehrs had no technical difficulties accessing and analyzing the data because she was able to use her own equipment. *Id.* at pp. 40-42. In addition, Lin gave Loehrs all of the government discovery that Loehrs had never received from Pedraza. *Id.* at pp. 43-44. Once Loehrs was able to review Perez's hard drive without obstacles and with the benefit of complete discovery, she wrote a final report on December 31, 2019. ECF No. 139-2, at pp. 3-42. On January 13, 2020, Perez filed an amended motion to vacate his conviction. ECF No. 139. On July 21, 2021, the case was reassigned from Judge DuBois to the Honorable Anita B. Brody. ECF No. 153.

On February 7-9, 2022, the Court held an evidentiary hearing on Perez's amended habeas motion at which Tami Loehrs and Maria Pedraza testified.[2] ECF Nos. 162-64. Loehrs testified to the findings in her final report. ECF No. 165, at pp. 71-73. These were the same findings she would have testified to at Perez's trial, if she had been able to perform a complete analysis. *Id.* By re-examining Perez's computer, Loehrs confirmed that the two child pornography images presented by the government were "cached," meaning they were inadvertently saved along with hundreds of other images when a user visited an adult pornography website. ECF No. 165, at p. 44-53. Loehrs testified that a user would have had to scroll through hundreds of other images, which were not child pornography, to even lay eyes on these images. *Id.* at pp. 49-50, 52. Loehrs also found that another computer called "alfredoalonzo"[3] was connected to Perez's computer during the times that the other child pornography files were downloaded. *Id.* at pp. 59-60; ECF

---

[2] In addition to calling Pedraza and Loehrs to testify, Perez called his sister, Ana Echevarria. ECF No. 165. The government called Michael Moore, a senior digital forensics examiner and IT specialist for the FBI. ECF No. 168.

[3] Alfredo Alonzo Sixto was another resident of Perez's household. ECF No. 165, at p. 7.

No. 139-2, at pp. 8-9. If Loehrs had been provided with complete discovery and access to Perez's computer before his trial, she would have been able to testify to the same conclusions that she did at the evidentiary hearing. ECF No. 165, at pp. 71-73.

Pedraza testified as to her reasons for not calling Loehrs as a witness. ECF No. 166. Despite instructing Loehrs to finalize the report, telling the judge and Perez that Loehrs would testify, flying Loehrs to Philadelphia for the trial, and compensating Loehrs $4700 to attend trial, Pedraza testified that she had substantial misgivings about calling Loehrs from the first moment she spoke with her. ECF No. 166, at pp. 29-31. This was in part because Pedraza was concerned that Loehrs would not be a persuasive witness in front of the jury. *Id.* at pp. 10, 33. She also expressed concern that any of Loehrs' findings would be undermined by the obstacles Loehrs encountered while examining Perez's computer. *Id.* at p. 5. Pedraza admitted, however, that she did not consider looking for an alternative expert because she was worried that she would not be granted a continuance. *Id.* at p. 7. Pedraza never had a conversation with Perez about requesting a continuance or hiring a new expert. *Id.* She never even attempted to request a continuance with the court to perform additional investigation. *Id.* at p. 7-8.

## II.     LEGAL STANDARD

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b).

### III. DISCUSSION

Perez argues Pedraza was ineffective for failing to undertake a complete investigation and for failing to call a computer forensic expert at trial. ECF No. 139-1, at p. 4. I find that counsel was constitutionally ineffective and will therefore grant Perez's motion.[4]

To succeed on a claim for ineffective assistance of counsel, a petitioner must prove that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, "a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance." *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013). Under the second prong, a court must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

a. <u>Deficient performance</u>

Trial counsel has a duty to investigate "all avenues leading to facts relevant to the merits" of the case. *Showers v. Beard*, 635 F.3d 625, 632 (3d Cir. 2011) (citing *Rompilla v. Beard*, 545 U.S. 374, 387 (2005)). Strategic choices by trial counsel are "virtually unchallengeable" when they are made after a full investigation. *Siehl v. Grace*, 561 F.3d 189, 198 (3d Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). But trial counsel's choice not to conduct a thorough investigation must be based on a "reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. When counsel makes a strategic decision without performing a full investigation, it is the decision not to investigate fully that must be reasonable

---

[4] Perez argues three additional grounds for ineffective assistance of counsel. Because I find that counsel was constitutionally ineffective on the first ground, I will not address the other three.

for counsel's performance to be constitutionally adequate. *Wiggins v. Smith*, 539 U.S. 510, 511 (2003).

Perez argues that Pedraza was ineffective for failing to authorize further investigation into his computer and failing to call Tami Loehrs or any other computer forensic expert at trial. When Pedraza took over Perez's case from another attorney in her office, Loehrs had already been hired to examine Perez's computer and had completed a draft report. ECF No. 166, at pp. 4-6. In her initial examination, Loehrs was not able to examine Perez's computer "with the necessary software, equipment, and resources required for a thorough in-depth forensics examination." ECF No. 139-2, at p. 135. Loehrs also wrote in her draft report that additional examination could reveal critical evidence to the case, and that she "did not find any forensic evidence to support the charges . . . that Javier Perez knowingly possessed visual depictions involving the use of minors in sexually explicit conduct." *Id.* at p. 138.

Pedraza did not call Loehrs to testify in part based on concerns that Loehrs would not be a persuasive or reliable witness. ECF No. 166, at pp. 10, 32-33. It is well within trial counsel's right to determine whether a witness would be credible in front of the jury, and such a strategic decision is entitled to a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. But any strategy about what evidence to present must be informed by a thorough investigation in order to be reasonable. If the investigation was unreasonable, any strategic decision that results must also be unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 511 (2003) (" [T]his Court's principal concern is not whether counsel should have presented a mitigation case, but whether the investigation supporting their decision not to introduce mitigating evidence . . . was *itself reasonable*."); *see also Blystone v. Horn*, 664 F.3d 397, 420 (3d Cir. 2011) ("[I]f counsel has

failed to conduct a reasonable investigation to *prepare* for sentencing, then he cannot possibly be said to have made a reasonable decision as to what to *present* at sentencing.").

In this case, Pedraza did not ultimately call Loehrs or any other forensic expert. It is therefore irrelevant whether Pedraza's concerns about Loehrs' credibility were reasonable; at issue instead is whether she undertook a thorough investigation before determining that no forensic expert was necessary. The same is true for any argument that forensic expert testimony was unnecessary for counsel's trial strategy. *See Showers v. Beard*, 635 F.3d 625, 632 (3d Cir. 2011) (citing *Couch v. Booker,* 632 F.3d 241, 246 (6th Cir.2011)) ("To make a reasoned judgment about whether evidence is worth presenting, one must know what it says.").  In this case, Pedraza's decision not to present any forensic expert testimony was not based on a full and thorough investigation—and it appears it was not based on any investigation at all.[5]

In a case for possession of child pornography, Perez's personal computer, where the alleged child pornography images were found,[6] was perhaps the most critical piece of evidence in the case. Perez was charged with possession and distribution of child pornography, both of which require a *mens rea* of knowledge. *See* ECF No. 1; 18 U.S.C. § 2252(a)(2); 18 U.S.C. § 2252(a)(4)(B). Any evidence that Perez's computer was accessed by other users or that other devices in the home were responsible for the child pornography that was found would be strong exculpatory evidence. Loehrs' draft report found that this was "highly possible," but would require further investigation to confirm. ECF No. 139-2, at p. 137. Nonetheless, Pedraza

---

[5] Pedraza told Judge DuBois on October 7, 2015 that she would not be undertaking any investigation before trial. Continuance Hrg. Transcript 10/7/15, at pp. 3-4.

[6] Some of the alleged child pornography files were downloaded through Ares, a file sharing program, but were located by Special Agent Schreier through his search of Perez's computer. ECF No. 139-2, at p. 7, 235-36. The other images were found saved on Perez's personal computer. *Id.* at p. 7, 237-41.

8

undertook no further investigation and did not present Loehrs or any other expert as a witness to testify to this possibility.

In addition to suggestions of exculpatory evidence, Loehrs' draft report detailed the issues she encountered while attempting to examine Perez's computer. ECF No. 139-2, at p. 135. Pedraza was concerned that these obstacles would undermine Loehrs' findings. ECF No. 166, at p. 5. But Pedraza took no steps to rectify these issues in the nearly four months between taking over the case and trying it. In fact, although Pedraza instructed Loehrs to finalize her report, told the judge and Perez that she would be calling Loehrs, flew Loehrs from Arizona to Philadelphia for the trial, and compensated Loehrs $4700 to attend trial, she failed to even provide Loehrs with crucial updated discovery. Trial Transcript 1/13/16, at p. 2; ECF No. 165, at pp. 89, 94-95; ECF No. 110, at p. 3.

In Loehrs' draft and final preliminary report, Loehrs stated that two of the alleged child pornography images were located in the folder where images go when they are "cached," or downloaded without ever being seen or sought out. ECF No. 139-2, at pp. 138, 48. Loehrs was not able to locate the images themselves because the government did not provide their file name or URL. *Id*. In fact, the government did provide the file names and original URLs to defense counsel on June 2, 2015—three months before Pedraza took over the case, and six months before the trial. *Id.* at pp. 234-38.[7] Pedraza never provided Loehrs with any updated discovery even though Loehrs did not complete her final report until January of 2016. ECF No. 139-2, at p. 43; ECF No. 165, at p. 39; ECF No. 166, at pp. 16-17. Pedraza agrees that evidence that two of the child pornography images were cached from an adult pornography website, along with hundreds of other files over a period of seconds, would be important information that she would want

---

[7] The government provided additional information about the files at issue on May 29, 2015 and July 28, 2015. ECF No. 139-2, at pp. 232-33; ECF No. 113-1, at p. 9.

presented to the jury. ECF No. 166, at p. 21. In fact, she cross-examined the prosecution's expert about the possibility that images were cached and mentioned it in her closing. Trial Transcript 1/12/16, at p. 124-25; Trial Transcript 1/13/16, at p. 48-49. But she failed to provide Loehrs with the discovery needed to include this in her report—even though it was in Pedraza's possession—and did not even consider arranging for Loehrs to re-examine Perez's computer. ECF No. 166, at p. 6.

The Third Circuit's analysis in *Siehl v. Grace* is instructive. 561 F.3d 189. In *Siehl*, the defendant was on trial accused of murdering his wife. *Id.* at 191. His attorneys received a "preliminary analysis" from a forensic expert challenging the government's fingerprint evidence tying the defendant to the scene of the crime. *Id.* Trial counsel did not ultimately present any expert testimony to counter the government's forensic evidence, and the defendant was convicted. *Id.* at 192. Evidence was presented post-trial of issues with the original expert's qualifications that called his preliminary analysis into question. *Id.* at n.2. Although the Third Circuit agreed that the preliminary analysis was rife with red flags, the court nonetheless concluded that competent counsel would have continued to work with the expert or sought another expert upon receiving a preliminary report calling the government's forensic evidence into question. *Id.* at 196, 198.

Pedraza's concern that Loehrs was a potentially unreliable expert does not relieve her of the duty to perform *any* further investigation before determining there was no need for any expertise or further investigation at all. Upon receiving Loehrs' draft report that called the government's core evidence into question, Pedraza had a duty to investigate further. Like in *Siehl*, Pedraza's failure to do so resulted in the government's forensic expert being virtually unchallenged, leaving critical evidence undisclosed to the jury.

In addition to failing to perform further analysis through Loehrs, Pedraza did not consider hiring another expert to examine Perez's computer or to testify to Loehrs' findings. ECF No. 166, at p. 7. Pedraza did not do so because she believed the judge would not grant a continuance. *Id.* But she did not request a continuance for this purpose, speak with her client about the possibility of getting a continuance, or speak to her client at all about potentially looking for a new expert. *Id.* at pp. 7-8; 21. Pedraza stated that when she received the matter she was told there would be no further continuances by the court. *Id.* at p. 7. Despite this, Pedraza did request a continuance—which was unopposed by the government and granted by the judge—on September 9, 2015. ECF No. 47. Pedraza argued at the continuance hearing that she required additional time to review the discovery and prepare for trial but was not considering undertaking any further investigation. Continuance Hrg. Trancript 10/7/15, at pp. 3-4. The request for a continuance was granted, and the trial was continued more than three months, until January 11, 2016. *Id.* at p. 5; ECF No. 53.

Trial counsel's choice not to conduct a thorough investigation must be based on a "reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Pedraza's concern that no continuance would be granted does not make further investigation—that Pedraza herself indicated would have been helpful for a jury to hear—unnecessary. Even if this concern was a reasonable one, Pedraza elected not to pursue any further investigation even before completing her initial review of discovery, and before she did in fact request a continuance. Continuance Hrg. Trancript 10/7/15, at pp. 3-4. Pedraza did not attempt to provide Loehrs with complete discovery or with an opportunity to examine the evidence without obstacles and did not even consider looking for another forensic expert to perform additional investigation or testify to the exculpatory findings in Loehrs' report. ECF No.

11

166, at p. 21. Pedraza's concern that Loehrs was not the appropriate expert to present this evidence does not relieve her of the duty to perform any further investigation before determining there was no need for any expertise or further investigation at all.

Pedraza's decision not to call a forensic expert was made without a full investigation, and her decision not to conduct any forensic investigation after the case was transferred to her was unreasonable. Therefore, Pedraza's performance was deficient.

b. Prejudice to Perez

In addition to proving counsel's performance was deficient, Perez must also prove that this deficiency adversely affected him. *Strickland*, 466 U.S. at 693. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Failure to present forensic expertise when forensic evidence is at the core of the government's case is prejudicial. *Siehl*, 561 F.3d at 196.

Perez's habeas counsel contacted Loehrs in 2019 and provided her once again with the data from Perez's computer. ECF No. 165, at p. 40. Unlike when she was hired by trial counsel, Loehrs was able to use her own equipment and finally gain access to all of the data. *Id.* at pp. 40-41. In addition, habeas counsel provided Loehrs with the additional discovery that Pedraza did not give her. *Id.* at pp. 43-44. Therefore, at the evidentiary hearing, Loehrs was able to testify to her complete analysis of Perez's computer. *Id.* at pp. 71-73. Loehrs testified that if she had been provided with complete discovery and access to Perez's computer before his trial, she would have been able to testify to the same conclusions that she did at the evidentiary hearing. *Id.*

With the benefit of full discovery, Loehrs testified that two of the child pornography images presented by the government were inadvertently saved when a user visited an *adult*

pornography website—and that any user would have had to scroll through hundreds of other images, which were not child pornography, to even lay eyes on these images. *Id.* at pp. 44-53. Loehrs testified that another computer called "alfredoalonzo" was connected to Perez's computer during the times that the other child pornography images were downloaded. *Id.* at pp. 57-59; ECF No. 139-2, at pp. 8-9. Loehrs' testimony provided explanations for every file that the government identified as child pornography, and none of those explanations required that Perez knowingly downloaded or viewed those files.[8] Without testimony or a final report by Loehrs, the jury heard only from the government's expert witness who was virtually unchallenged. The government would certainly have cross-examined and attempted to impeach Loehrs, but even with thorough government cross-examination, there is a reasonable probability that Loehrs' testimony would have raised reasonable doubt for the jury—and that another expert witness could have done the same.[9] Therefore, Pedraza's failure to investigate prejudiced Perez.

---

[8] The government references the Third Circuit's non-precedential decision in *United States v. Vaskas*, in which the court found a defendant was not prejudiced after he was not shown a second expert report written by Loehrs prior to agreeing to plead guilty. 696 F. App'x 564, 565 (3d Cir. 2017). The Third Circuit found that Loehrs' second report "reiterated the conclusion of the first" and only included "different technical details," and therefore only seeing the first report did not prejudice the defendant. *Id.* at 566. The same cannot be said about Loehrs' 2016 report compared to her 2019 report in this case. For example, in Loehrs' 2016 report, she mentioned only that one or more devices identified as "alfredoalonzo" and "ALFREDOS-IMAC" had a connection with Perez's account—however, "[d]ue to limitations with the evidence and time constraints described in the beginning of this report, analysis into how this activity occurred, when it occurred and what effect this may have had on the downloading of child pornography files has not been conducted." ECF No. 139-2, at p. 119. In Loehrs's 2019 report, she found these remote connections to Perez's computer occurred *when the child pornography itself was downloaded.* ECF No. 139-2, at pp. 8-9.

[9] The government argues that Perez cannot show prejudice because Loehrs would have been "thoroughly impeached and discredited" if she testified, and that her additional analysis "provided additional fertile ground for cross examination given the many technical inaccuracies underpinning her conclusions." ECF No. 171, at p. 23. At the evidentiary hearing, where Loehrs *did* testify to her additional analysis, she was cross examined by the government about her lack of a masters degree, her methodology, and the discrepancies between her findings and the prosecution's expert. *See* ECF No. 165, at pp. 76-148. The government also questioned Loehrs

IV.     CONCLUSION

In a case for possession of child pornography, forensic evidence is crucial to proving guilt. Loehrs' testimony would have undermined the government's key evidence, and there is a reasonable probability that, if she or another expert testified to her ultimate findings, the jury would have reasonable doubt as to whether Perez knowingly possessed the child pornography images. Despite this, Pedraza did not present any forensic evidence. She flew Loehrs to trial but failed to provide her with necessary discovery or access to finalize her incomplete report. She did not call Loehrs to testify because of concerns about her as a witness, but never considered hiring another expert. She failed to ask her client or the court for a continuance to perform necessary forensic investigation through Loehrs or anyone else. Therefore, Pedraza was constitutionally ineffective by failing to thoroughly investigate or present forensic evidence and Perez's § 2255 motion will be granted.

s/ANITA B. BRODY, J.<br>
ANITA B. BRODY, J.<br>
May 18, 2022

---

about prior court decisions questioning her conclusions. *Id.* at p. 148-52. Her testimony was nonetheless persuasive, and there is a reasonable probability that a jury would have felt the same.